STATE OF NORTH CAROLINA v. GARY LEE WEBB

No. 629A82

(Filed 3 November 1983)

**1. Robbery § 5.2— taking vehicle while "scared and confused"—not exculpatory—guilt of armed robbery—proper instructions to jury**

　　In a prosecution for second degree murder and armed robbery, the trial court's summary of the evidence included statements favorable to defendant including statements that defendant took the car "while scared and confused" in order to escape the scene; however, even if defendant did use the car to escape the scene at a time when he was confused and scared, these facts would not exculpate him. All the evidence tended to show defendant never intended to return the car and that he took and disposed of it under circumstances rendering it unlikely that it would ever be recovered and with indifference to the rights of the owner.

**2. Criminal Law § 138— sentencing hearing—aggravating circumstance that defendant on pretrial release in separate felony properly considered**

In a prosecution for armed robbery and second degree murder, the trial court properly considered as an aggravating circumstance that defendant was on pretrial release in a separate felony case, and consideration of G.S. 15A-1340.4(a)(1)k did not violate defendant's right to constitutional due process.

BEFORE *Judge D. Marsh McLelland* presiding at the 7 June 1982 Criminal Session of DURHAM Superior Court, and a jury, defendant was found guilty of second degree murder and armed robbery. Judge McLelland ordered a life sentence on the second degree murder conviction to begin running at the expiration of the fourteen-year sentence he imposed on the armed robbery conviction. Defendant appeals the second degree murder conviction and sentence as a matter of right pursuant to N.C. Gen. Stat. § 7A-27(a) (1981). Defendant's motion to bypass the Court of Appeals for the armed robbery conviction was allowed on 19 November 1982.

*Rufus L. Edmisten, Attorney General, by Reginald L. Watkins, Assistant Attorney General, for the State.*

*R. Hayes Hofler, III, and A. Neil Stroud for defendant appellant.*

EXUM, Justice.

In this appeal defendant brings forward two assignments of error. Defendant asserts that during its instructions to the jury the trial court erred by failing to give him the benefit of certain evidence favorable to his defense. Defendant also maintains his constitutional right to due process was violated when the trial court considered, for purposes of sentencing, that the murder was committed while defendant was on pretrial release in an unrelated felony case. Neither argument affords defendant any relief.

The state's evidence tends to show that on the evening of 24 October 1981 Roland Black, a resident of Richmond, Virginia, was reported missing. Black had last been seen at the Fountainhead Adult Book Store on Foster Street in Durham around eight o'clock that evening. At that time Black was driving a brown Mercury Cougar automobile with Virginia license plates. Later that same night, Investigator George Green of the Durham Depart-

ment of Public Safety saw defendant driving a brown Mercury Cougar with Virginia license plates. The brown Mercury Cougar belonging to Roland Black was recovered on Thursday, 29 October 1981, along Cook Road in southern Durham County after someone living in the area had become suspicious and notified the police. The victim's car was clean inside, but muddy around the tires, and the window in the driver's door was missing.

During the evening of 28 October 1981 defendant approached Investigator Green, a friend, at his off-duty job and told him that he urgently needed to speak with him. Green advised defendant to return home and wait for his arrival the following morning. Around 9 a.m. on 29 October 1981 Investigator Green arrived at defendant's home with Investigator Taylor and immediately informed defendant of his rights from a "*Miranda* Card." Defendant directed the officers to the dead end of Cooper Street in Durham where the victim's body along with his clothing, wallet, credit cards and twenty dollars in case were recovered. Although defendant initially stated that he knew the location of the victim's body as the result of overhearing a conversation, he later gave the police a statement admitting that he shot the victim in an attempt to repel a sexual assault. The statement by defendant as presented at trial is as follows:

On Saturday, October 23rd I was out and I went down to a place better known where queers hang out. It's a book store. I went in intentionally to read some books. I didn't know all of this was going to happen. I went to the bathroom, I went straight to the bathroom and used the bathroom. I saw a brown car outdoors with someone sitting in it, so I walked out the doors going out to mind my own—my business when this man called me and asked me to have a beer out of his cooler in the back seat. I took the beer and he asked me to go for a ride with him. I told him no, no, I don't think I would want to do that. After that I ended up getting in the car with the man. He left and on the way to our destination where he had planned to go he tried to molest me. I asked him not to do that again and to let me out of the car. For a while we struggled and I could not get out of the car. We ended up down by the school at a dead end road to where this incident took place. This is where a big fight came between me and the man in the front seat of the car. At this time I pulled a

State v. Webb

thirty-eight and shot in the direction toward his legs trying
to make him leave me alone. I still—he still grabbed me and
pulled me to him. I pulled the trigger not aiming at any part
of his body, just pulling the trigger and I shot him in the
head.

At this time I didn't know what to do. I was scared. I know I
had killed a man. I pulled him out of the car, dragged him
into the woods, put a couch over top of him, got back into the
car, went to the car wash, washed the car out and I left and
rode the car around. I didn't know what to do. I was scared.
At this time I kept the car all that night. I took the car to
Cook Road Sunday and parked it by the lake with the inten-
tions of burning it. When I got out I just had a funny feeling
I had better leave that car alone. I got out of the car and I
threw the keys away and threw the gun in the woods and
walked back to the city limits of Durham.

At this time my girlfriend—my wife had seen these things on
T.V. of what had happened and she asked me did I know any-
thing about it. I told her I needed to go talk to a friend of
mine who was a detective. I found him Wednesday night on
his duty at Studio D's. I told him that I needed to talk to him
tomorrow morning very badly. He told me to go home and
just stay there and don't go nowhere until tomorrow and that
he would come by at nine-thirty or ten o'clock, no later than
ten. When he came I was at home fully dressed and ready to
talk to him. He had another detective with him. At this time
he came to my door and knocked on the door. I went with
him to show him where the body was at the scene. I told him
everything that had happened that night and I told him what
was what and I didn't do it intentionally, it was an accident.
At this time before I left I told him when I first saw him the
first thing I said was it was an accident and he asked
me—and asked me what was it I was saying, and I told him
that I did it and was involved in it. Later I told him I was in-
volved in it. I make this statement of my own free will and
no threats or promises have been made and no pressure of
any kind have been used against me.

Investigator Green also testified that defendant initially
stated that he had gotten the victim's car from two acquaintances

who requested that he clean up the car and get rid of it. The police also discovered later that defendant had not thrown away the car keys and the gun as he stated in his confession. However, with defendant's help those items were recovered.

The state also produced the testimony of Dr. John Butts, Associate Chief Medical Examiner for the State of North Carolina. Dr. Butts testified Roland Black had been shot four times; the gunshot wounds caused his death.

Defendant did not present any evidence at trial.

[1] Initially defendant argues the trial court erred in the robbery case when it failed, in its jury instructions, to give defendant the benefit of certain facts favorable to his defense that he lacked the requisite felonious intent to steal the car. Defendant argues the trial court failed to comply with N.C. Gen. Stat. § 15A-1232 (1981): ·

> Jury instructions; explanation of law; opinion prohibited.—In instructing the jury, the judge must declare and explain the law arising on the evidence. He is not required to state the evidence except to the extent necessary to explain the application of the law to the evidence. He must not express an opinion whether a fact has been proved.

Defendant argues the trial court failed to mention, in its summary of the evidence, the evidence favorable to defendant and failed to explain the law arising on this favorable evidence. Defendant relies on *State v. Hewett*, 295 N.C. 640, 247 S.E. 2d 886 (1978); *State v. Sanders*, 298 N.C. 512, 259 S.E. 2d 258 (1979), *cert. denied*, 454 U.S. 973 (1981); *State v. Ward*, 300 N.C. 150, 266 S.E. 2d 581 (1980); and *State v. Pryor*, 59 N.C. App. 1, 295 S.E. 2d 610 (1982).

In *Hewett*, we held that, although the trial judge was not required by the predecessor of section 15A-1232 to give contentions of either party, if he does give contentions of one party, "he must also give the pertinent contentions of the opposing party." 295 N.C. at 643, 247 S.E. 2d at 888. An instruction which fails "to give equal stress to the state and defendant in a criminal action is error. . . . Obviously equal stress is absent when the contentions of the state are fully stated and the contentions of the defendant are not stated at all. This requires a new trial." *Id.*

In *Sanders*, we held that section 15A-1232 was violated "when the court recapitulates fully the evidence of the State but fails to summarize, at all, evidence favorable to the defendant," even when defendant offers no evidence but the state's case contains evidence favorable to defendant. 298 N.C. at 517, 519, 259 S.E. 2d at 262. In *Sanders*, the trial court failed to mention in its summary certain evidence brought out on cross-examination of the state's witnesses which tended to exculpate defendant and some evidence brought out by the state itself which "tended to raise inferences favorable to defendant." *Id.* at 517, 259 S.E. 2d at 261.

In *Ward*, we held that failure of the trial court to refer, in its summary of the evidence, to that portion of defendant's testimony that he did not shoot at or near the deceased and an omission in the court's final mandate "combined to deprive defendant of the full benefit of his testimony" and entitled him to a new trial. 300 N.C. at 157, 266 S.E. 2d at 586.

In *Pryor* the Court of Appeals found prejudicial error in the trial court's failure to "make any reference to evidence favorable to the defendant . . . which tended to show defendant's lack of involvement in the robbery itself or its planning." 59 N.C. App. at 11, 295 S.E. 2d at 617. The evidence favorable to Pryor was offered by the state, defendant having offered no evidence. *Id.* at 12, 295 S.E. 2d at 617.

Defendant here first contends the trial court did not comply with these principles, failing to mention evidence favorable to him in its summary of the evidence. This "favorable" evidence, defendant contends, was in defendant's confession when he said he took the car because he was frightened, confused and "didn't know what to do." The trial court did accurately summarize defendant's confession, however, expressly referring to that part of the confession defendant says was favorable. The trial court's summary of the evidence included the following statements:

> [T]hat Black nevertheless grabbed him and pulled defendant toward him and defendant then pulled the trigger without aiming and shot Black in the head; that defendant knew he had killed Black, was scared, did not know what to do; that he pulled Black's body out of the car, drug it into the woods, put a couch over it, got back in the car, drove it to a car

wash, washed it out, and rode around; that on Sunday he took the car to Cook Road intending to burn it and did not, instead he threw the keys away and the gun into the woods and walked back to town . . . .

All of the above statements were included in the court's summary of the state's evidence. While the court never summarized evidence for the defendant (presumably because defendant offered no evidence), it summarized fairly the state's evidence and included those portions favorable to defendant.

Defendant further urges that the trial court did not "segregate the material facts of the case, array the facts on both sides, and apply the pertinent principles of law to each, so that the jury may decide the case according to the credibility of the witnesses and the weight of the evidence." *State v. Friddle,* 223 N.C. 258, 261, 25 S.E. 2d 751, 753 (1943), *quoted with approval* in *State v. Ward,* 300 N.C. at 155, 266 S.E. 2d at 584-85. Although in both *Friddle* and *Ward* defendants offered evidence tending to be exculpatory, the principle relied on in these cases would apply here, where all of the evidence was offered by the state, provided some of that evidence would be exculpatory.

In the instant case, however, the "favorable" evidence upon which defendant relies is not necessarily exculpatory, even if it is believed. Defendant argues that if the jury found defendant took the car "while scared and confused" in order to escape the scene, he would not be guilty of armed robbery and the trial court erred in failing to so instruct the jury. This is not the law.

In *State v. Smith,* 268 N.C. 167, 150 S.E. 2d 194 (1966), defendant's accomplice, Henry, broke into H. H. Adams Service Station. Adams awoke with his rifle in hand and took custody of Henry. Adams marched Henry to a place where defendant and Policeman R. W. Spikes were standing. Spikes had earlier accosted defendant under the wheel of a parked 1960 Chevrolet automobile with its motor running. Defendant had succeeded in disarming Spikes of his .38 caliber pistol and was holding Spikes at bay when Adams and Henry arrived. By threatening Adams with the .38 caliber pistol, defendant forced Adams to drop his rifle. Defendant picked up the rifle and he and Henry, taking the rifle and the pistol with them, drove off. Forty minutes later police found Henry standing by the wrecked automobile. Adams'

rifle was beside a telephone pole near where the car wrecked. Defendant was later arrested and directed officers to his home where he showed them Spikes' .38 caliber pistol which he had hidden in a trunk. Defendant was convicted of assaulting Spikes and of armed robbery of a rifle from Adams.

On appeal defendant argued that the trial judge erred by not submitting in the armed robbery case the lesser included offense of assault upon Adams on the ground that there was some evidence which would permit an inference that defendant took the rifle, not intending to steal it, but simply intending to disarm Adams in an act of self-defense. The Court said:

> In robbery, as in larceny, the taking of the property must be with the felonious intent *permanently* to deprive the owner of his property. [Citations omitted.] Thus, if one disarms another in self-defense with no intent to steal his weapon, he is not guilty of robbery. [Citation omitted.] If he takes another's property for the taker's immediate and temporary use with no intent permanently to deprive the owner of his property, he is not guilty of larceny [Citations omitted.]

> Defendant here clearly intended to appropriate the rifle to a use inconsistent with its owner's property rights. Assuming that defendant's immediate purpose was to deprive Adams of a weapon so Adams could not use it against him or prevent his escape, still this is not in the least inconsistent with an intent permanently to deprive Adams of his rifle. The narrow question here is whether the circumstances under which defendant took the rifle are susceptible to the inference that he had any intent other than that of permanently depriving Adams of the weapon.

*Id.* at 170, 150 S.E. 2d at 198. The Court answered the "narrow question" posed negatively. The Court reasoned as follows:

> Where the evidence does not permit the inference that defendant ever intended to return the property forcibly taken but requires the conclusion that defendant was totally indifferent as to whether the owner ever recovered the property, there is no justification for indulging the fiction that the taking was for a temporary purpose, without any *animus furandi* or *lucri causa.*

In *State v. Smith*, 68 S.W. 2d 696 (Mo. Sup. Ct.), prisoners, after a jail break, took an automobile at revolver point in order to make good their escape. In affirming a conviction of armed robbery, the Court said, 'We think the taking of the automobile was done with the intention of depriving the owner permanently, even though they later abandoned it.'

It would be unreasonable to assume that defendant, fleeing from arrest for the crime of felonious breaking and entering, had any expectation of returning the rifle he had taken in order to effect his escape. To do so by any certain means would be to invite detection and capture. For the purpose of decision here, we assume that defendant took the rifle 'for temporary use' and that after it had served his purpose of escape, he intended to abandon it at the first opportunity lest it lead to his detection. Such procedure, however, would leave Adams' recovery of his rifle to mere chance and thus constitute 'such reckless exposure to loss' that it is consistent only with an intent permanently to deprive the owner of his property. See 32 Am. Jur., Larceny § 37 (1941). In abandoning it, defendant put it beyond his power to return the rifle and showed total indifference as to whether Adams ever recovered his rifle. When, in order to serve a temporary purpose of his own, one takes property (1) with the specific intent wholly and permanently to deprive the owner of it, or (2) under circumstances which render it unlikely that the owner will ever recover his property and which disclose the taker's total indifference to his rights, one takes it with the intent to steal (*animus furandi*). A man's intentions can only be judged by his words and deeds; he must be taken to intend those consequences which are the natural and immediate results of his acts.

*Id.* at 172-73, 150 S.E. 2d at 200.

As in *Smith*, all the evidence here tends to show defendant never intended to return the car and that he took it and disposed of it under circumstances rendering it unlikely that it would ever be recovered and with indifference to the rights of the car's owner. Therefore, even if defendant did use the car to escape the scene at a time when he was confused and scared, these facts, under *Smith*, would not exculpate him.

The trial judge here clearly instructed the jury that, in order to find defendant guilty of robbery of the car, it must find beyond a reasonable doubt that defendant, among other things, took the car and carried it away "knowing that he was not entitled to take the property and intending at the time to deprive any person entitled to it permanently of its use . . . ." The court then told the jury immediately, "if, however, you do not so find the facts or have a reasonable doubt that such are the facts, your duty would be to return" a not guilty verdict. Under the facts and applicable legal principles this was a sufficient instruction on the issue of defendant's felonious intent.

[2] Defendant maintains the sentencing judge erred when he considered as an aggravating circumstance that defendant was on pretrial release in a separate felony case, "to wit: Breaking or Entering and Larceny in case #81CRS23007, Durham," when he committed the crime for which he was being sentenced. Defendant contends that consideration of such a circumstance violates his right to constitutional due process. We find no merit in this argument.

North Carolina General Statute § 15A-1340.4(a) provides in part:

> In imposing a prison term, the judge, under the procedures provided in G.S. 15A-1334(b), may consider any aggravating and mitigating factors that he finds are proved by the preponderance of the evidence, and that are reasonably related to the purposes of sentencing, whether or not such aggravating or mitigating factors are set forth herein, but unless he imposes the term pursuant to a plea arrangement as to sentence under Article 58 of this Chapter, he *must* consider each of the following aggravating and mitigating factors:
>
> (1) Aggravating factors:
>
>     . . . .
>
>     k. The defendant committed the crime while on pretrial release on another felony charge.

N.C. Gen. Stat. § 15A-1340.4(a)(1)k (Cum. Supp. 1981) (emphasis added). Defendant has failed to support his contention that N.C.

Gen. Stat. § 15A-1340.4(a)(1)k is unconstitutional with any authority, and our research has revealed none. Although a defendant on pretrial release in an unrelated felony case has not been convicted of the felony and is presumed to be innocent of its commission, he is in a special status with regard to the criminal law. He has not simply been accused of another crime, he has been formally arrested, appeared before a magistrate, and had the conditions of his release pending trial for this crime formally determined. *See generally*, N.C. Gen. Stat. §§ 15A-501 to -511 & -531 to -547 (1978 & Cum. Supp. 1981). Whether or not one in this position is in fact guilty, it is to be expected that he would, while the question of his guilt is pending, be particularly cautious to avoid commission of another criminal offense. If he is not and is convicted of another offense, his status as a pretrial releasee in a pending case is a legitimate circumstance to be considered in imposing sentence. The legislature may constitutionally require that it be considered. One demonstrates disdain for the law by committing an offense while on release pending trial of an earlier charge, and this may indeed be considered an aggravating circumstance.

We find no error in defendant's conviction and sentence in either the murder case, No. 81CRS25821, or the armed robbery case, No. 81CRS29048.

No error.