STATE OF NORTH CAROLINA v. JERRY WAYNE ROBERTSON

No. 9318SC743

(Filed 21 June 1994)

1. **Evidence and Witnesses § 293 (NCI4th)— attempted statutory rape and sexual offense—prior offense—acquittal— admissible**

    The trial court did not err in a prosecution for attempted first-degree statutory rape and attempted first-degree sexual offense in allowing the victim to testify that defendant threatened her by saying that if she told anyone what he was going to do, he was going to hurt her like he hurt Koda. Defendant was under indictment and on pretrial release for the murder of Koda Smith at the time of these offenses and was acquitted before this trial. The trial court had previously granted a motion *in limine* to prohibit mention of defendant's arrest, indictment, and trial for the murder, but had denied defendant's motion to prohibit reference to the name Koda Smith. The probative value of defendant's statement was to show that the victim was scared of defendant as well as why she did not scream or make any noise and does not depend on the proposition that defendant in fact hurt Koda. The statement formed an integral and natural part of the victim's account of the crime and was necessary to complete the story of the crime for the jury. N.C.G.S. § 8C-1, Rule 403.

    **Am Jur 2d, Evidence § 410.**

    **Admissibility of evidence as to other offense as affected by defendant's acquittal of that offense. 25 ALR4th 934.**

STATE v. ROBERTSON

[115 N.C. App. 249 (1994)]

2. **Evidence and Witnesses § 886 (NCI4th)— attempted statutory rape and attempted sexual offense—victim's statements to doctor—admitted as corroboration**

The trial court did not err in a prosecution for attempted first-degree statutory rape and attempted first-degree sexual offense by allowing the State's medical expert to testify about statements the victim made to her during a physical examination. Whether the testimony fell within the medical diagnosis exception to the hearsay rule was not addressed because the statements corroborated the earlier testimony of the victim, defendant objected to the testimony "except for purposes of corroboration," and the trial court properly instructed the jury that the testimony was received only for the purpose of corroboration.

**Am Jur 2d, Evidence §§ 661 et seq.**

3. **Evidence and Witnesses § 3020 (NCI4th)— attempted statutory rape and attempted sexual offense—defendant's curfew—not improper impeachment**

The trial court did not err in a prosecution for attempted first-degree statutory rape and attempted first-degree sexual offense by allowing the State to ask defendant whether he had a midnight curfew where defendant initially denied having a curfew, was shown his pretrial release papers for another offense out of the presence of the jury, and testified that he had not remembered having a curfew but remembered now. No extrinsic evidence of defendant's pretrial release was admitted before the jury and there was no indication that the jury was aware of defendant's prior arrest, so that the jury could not have reasonably inferred that defendant, age 17, was under anything other than a traditional parental curfew during the night in question. N.C.G.S. § 8C-1, Rule 608(b).

**Am Jur 2d, Witnesses §§ 587-590.**

4. **Evidence and Witnesses § 2337 (NCI4th)— attempted statutory rape and first-degree sexual offense—expert testimony—suggestibility of child witnesses—not admissible**

The trial court did not err in a prosecution for attempted first-degree statutory rape and attempted first-degree sexual offense by excluding the testimony of defendant's expert psy-

STATE v. ROBERTSON

[115 N.C. App. 249 (1994)]

chologist on the suggestibility of child witnesses where the witness had never examined or evaluated the victim or anyone else connected with this case. On these facts, the trial court could properly conclude that the probative value of the testimony was outweighed by its potential to prejudice or confuse the jury. N.C.G.S. § 8C-1, Rule 702.

**Am Jur 2d, Expert and Opinion Evidence § 191.**

**Necessity and admissibility of expert testimony as to credibility of witness. 20 ALR3d 684.**

5. **Criminal Law § 1234 (NCI4th)— attempted statutory rape and attempted sexual offense—sentencing—immaturity not found as mitigating factor—no error**

The trial court did not err when sentencing the seventeen-year-old defendant for attempted first-degree statutory rape and attempted first-degree sexual offense by not finding defendant's immaturity as a mitigating factor. Age alone is not sufficient to support this factor and defendant presented no evidence on the effect of his immaturity upon his culpability for the offense. Although defendant contended that the court erred by evaluating defendant's immaturity at the time of trial rather than the time of the offense, the trial court did not abuse its discretion in not finding this factor. N.C.G.S. § 15A-1340.4(a)(2)e.

**Am Jur 2d, Criminal Law §§ 598, 599.**

6. **Criminal Law § 1169 (NCI4th)— attempted statutory rape and attempted sexual offense—sentencing—aggravating factor—pretrial release**

The trial court did not err when sentencing defendant for attempted first-degree statutory rape and attempted first-degree sexual offense by finding in aggravation that defendant committed the offenses while on pretrial release for a felony charge where he was ultimately acquitted of the prior charge. The underlying rationale for the factor involves disdain for the law; the fact that defendant was subsequently acquitted of the prior charge does not undermine that rationale. N.C.G.S. § 15A-1340.4(a)(1)k.

**Am Jur 2d, Criminal Law §§ 598, 599.**

7.  **Criminal Law § 1079 (NCI4th)— attempted statutory rape and attempted sexual offense—sentence greater than presumptive—no abuse of discretion**

> The trial court did not abuse its discretion when sentencing defendant for attempted first-degree statutory rape and attempted first-degree sexual offense by imposing a sentence greater than the statutory norm. The task of weighing aggravating and mitigating factors is discretionary and is not simply a matter of mathematics.

**Am Jur 2d, Criminal Law §§ 598, 599.**

Appeal by defendant from judgment entered 12 February 1993 by Judge W. Douglas Albright in Guilford County Superior Court. Heard in the Court of Appeals 8 March 1994.

On 12 February 1993, defendant, age seventeen, was convicted of attempted first degree statutory rape in violation of G.S. 14-27.6 and attempted first degree sexual offense in violation of G.S. 14-27.6. The trial court sentenced defendant to two consecutive ten year terms of imprisonment.

At trial, the State's evidence tended to show the following: On 6 June 1992, the victim, a twelve year old girl, was spending the night at the home of her fifteen year old friend, Danielle Johnson. At approximately 11:00 p.m. that night, James Christopher Creed, age nineteen, came over to visit the victim and Johnson. Creed went to the back of Johnson's house and spoke with Johnson and victim through a screened window in Johnson's bedroom. After talking with Johnson for about an hour, Creed and Johnson went to get something to eat at Burger King and left the victim in Johnson's bedroom. On their way home from Burger King, Creed and Johnson saw defendant walking down the street toward defendant's house. Johnson talked with defendant for about 5 minutes before returning home with Creed.

When Creed and Johnson returned to her house, Johnson crawled back into her bedroom through the screened window and continued talking to Creed. Defendant walked into the yard and introduced himself to Creed. Both Creed and defendant began talking to Johnson through the screened window. Eventually, Johnson and Creed left to go visit a friend of Johnson's. Creed suggested that defendant "stay and talk to [the victim]."

When Johnson and Creed returned about a half hour later, Johnson saw defendant in her bedroom with the victim. Johnson testified that when she looked in the window, she saw defendant "jumping up off of [victim] with his pants—pulling his pants up." Johnson asked defendant what he was doing in her bedroom and told him to leave. Creed testified that when defendant came out the window, defendant's shirt was unbuttoned and defendant was trying to put on his shoes as he climbed out the window.

Once defendant came outside, defendant, Johnson and Creed talked in the backyard for approximately 30 to 45 minutes, while the victim remained inside. Defendant told Creed and Johnson that he and the victim had been talking and that somehow their clothes had come off. Defendant told them that he began touching the victim's leg and inner thigh and then put his finger inside her vagina, but stopped because it had a very unpleasant smell. They discussed the incident very casually and laughed about it.

The victim testified that when Johnson and Creed left to visit friends, defendant crawled through the window, put his hand over her mouth and said that "[I]f [she] told anybody what he [defendant] was going to do, he was going to hurt [her] like he hurt Koda." The victim testified that defendant put his penis inside her vagina two times and inserted his finger into her vagina three times. The victim could not push defendant off of her and she did not scream or make any noise because she was afraid defendant would hurt her.

Defendant testified that on 6 June 1992, he had been walking to his grandmother's house when a car pulled up beside him. Johnson got out of the car and invited him to her house. Defendant knew Johnson but did not know Creed who was driving the car. Defendant walked to Johnson's house and began talking to Johnson and Creed. Defendant testified that Johnson and Creed later left to go visit friends but told him to stay and talk with the victim. Defendant stood on a bicycle under the bedroom window and talked with the victim. Defendant testified that he began to tire and asked the victim ten to twelve times if he could climb in the window. Eventually, the victim said that she did not care and defendant crawled through the window into the bedroom. Defendant testified that he did not intend to have sex with the victim when he climbed in the window and merely sat at the foot of the bed. The victim, however, "laid back on the bed and spread her legs." After talking briefly with the victim, defendant began rubbing the victim's knees and the inside of her legs. Defend-

ant pulled on the victim's shorts and asked the victim to help him take them off. The victim lifted her hips and removed her shorts and panties without resisting or saying no. Defendant testified that when the victim removed her panties, he noticed she had "an awful odor coming from her." Defendant testified that after he noticed the victim's vaginal odor, he did not want to have sex with her anymore and began looking for a way "to get out of the situation." Defendant testified that he did not touch the victim or insert his finger or his penis into her vagina. Defendant also testified that at no time had he removed his underwear.

When defendant heard Johnson and Creed talking outside, he began dressing and climbed out the window. Defendant testified that he told Johnson and Creed that he had inserted his finger into the victim's vagina because he thought that Creed and Johnson would "think a little less of me if I didn't tell them we did something." Defendant also testified that during the next week, the victim called defendant ten to twelve times and asked him to be her boyfriend. Defendant also told the investigating officer that he did not have sex with the victim and did not penetrate her in any fashion and that victim's vagina had a "strong personal odor."

After having testified for the State, Creed also testified as a defense witness. Creed expressed an opinion about the victim's character for truthfulness. Creed testified that "she tends to get carried away with things that she says at times." Creed also testified that he talked to Johnson and the victim on the night of the alleged incident before he went over to their house. Creed testified that the victim told him that she would give him oral sex if he would come and visit them.

From judgment entered and sentences imposed, defendant appeals.

*Attorney General Michael F. Easley, by Special Deputy Attorney General George W. Boylan, for the State.*

*Neill A. Jennings, Jr. for defendant-appellant.*

EAGLES, Judge.

Defendant brings forward several assignments of error. After carefully reviewing the record and briefs, we conclude that the trial court committed no error.

I.

**[1]** Defendant first contends that the trial court erred in allowing the victim to testify that defendant threatened her by saying, "[I]f [she] told anybody what he [defendant] was going to do, he was going to hurt [her] like he hurt Koda." The trial court allowed this testimony despite its previous ruling allowing defendant's motion in limine to prohibit reference to defendant's prior arrest, indictment, trial and acquittal of the murder of Koda Smith.

At the time of the events alleged here, defendant was under indictment and on pre-trial release for the murder of Aileen Koda Smith. Defendant was subsequently acquitted of that charge. Prior to trial here, defendant filed a motion in limine to exclude any reference to Koda Smith or her death or defendant's arrest, indictment and trial for her murder. The trial court granted defendant's motion to prohibit mention of defendant's arrest, indictment and trial for the alleged murder of Koda Smith, but denied defendant's motion to prohibit reference to the name Koda Smith. The victim testified at trial that defendant threatened her by saying, "[I]f [she] told anybody what he [defendant] was going to do, he was going to hurt [her] like he hurt Koda." Defendant contends that the trial court should have excluded the reference to "Koda" in the victim's testimony under Rule 403 of the North Carolina Rules of Evidence. We disagree.

Rule 403 provides:

### Rule 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Whether evidence should be excluded under Rule 403 is ordinarily a decision within the trial court's discretion. *State v. Meekins*, 326 N.C. 689, 700, 329 S.E.2d 346, 352 (1990). Defendant relies on *State v. Scott*, 331 N.C. 39, 413 S.E.2d 787 (1992), in which the Supreme Court held that:

[E]vidence that defendant committed a prior alleged offense for which he has been tried and acquitted may not be admitted in a subsequent trial for a different offense when its probative value

depends, as it did here, upon the proposition that defendant in fact committed the prior crime. To admit such evidence violates, as a matter of law, Evidence Rule 403.

*Id.* at 42, 413 S.E.2d at 788. We find *Scott* distinguishable.

In *Scott, supra,* the defendant was indicted on charges of second degree kidnapping, crime against nature, and three counts of second degree rape. The State's evidence at trial tended to show that defendant approached the victim at a convenience store and asked her for a ride home. The victim was already acquainted with the defendant and agreed to take him home. When they left the parking lot, the defendant threatened the victim with a knife and raped her.

At issue in *Scott* was the testimony of Wanda Freeman, a past acquaintance of defendant, who testified that defendant had raped her two years earlier under similar circumstances. Defendant objected on the grounds that he had been tried and acquitted of Freeman's rape by a jury. In holding that Freeman's testimony violated Rule 403 as a matter of law, the Supreme Court stated:

> When the probative value of evidence of this other conduct depends upon the proposition that defendant committed the prior crime, his earlier acquittal of that crime so erodes the probative value of the evidence that its potential for prejudice, which is great, must perforce outweigh its probative value under Rule 403.

*Scott,* 331 N.C. at 44, 413 S.E.2d at 790. The *Scott* court concluded that the probative value of Freeman's testimony depended upon the proposition that defendant had actually raped Freeman two years earlier. Defendant's acquittal of Freeman's rape so eroded its probative value that it was "substantially outweighed by the danger of unfair prejudice" as a matter of law.

Here, the probative value of defendant's statement does not depend on the proposition that defendant in fact hurt Koda. The victim testified that she did not scream or make any loud noises because defendant had threatened to hurt her. The probative value of defendant's statement was to show that the victim was scared of defendant as well as why she did not scream or make any noise. Accordingly, we conclude that *Scott* does not control here.

The State contends that defendant's statement is admissible under *State v. Agee,* 326 N.C. 542, 391 S.E.2d 171 (1990), as part of the

"chain of circumstances" establishing the context of the crime charged. We agree. "[A]dmission of evidence of a criminal defendant's prior bad acts, received to establish the circumstances of the crime on trial by describing its immediate context, . . . . is admissible if it 'forms part of the history of the event or serves to enhance the natural development of the facts.' " *Id.* at 547, 391 S.E.2d at 174 (citations omitted). In *Agee*, defendant was on trial for felonious possession of LSD. The arresting officer testified that he stopped defendant's vehicle for weaving on the road. When the officer approached the car, defendant made a threatening remark. The officer called for backup and when backup arrived, the officer searched defendant's person for weapons. During the search, the officer found a bag of marijuana in defendant's pocket. After finding the marijuana, the officer searched the vehicle and found the LSD. Defendant objected to the officer's testimony about finding the marijuana in defendant's pocket because defendant had previously been acquitted of possessing that marijuana in another trial. In holding that the officer's testimony was admissible, the Supreme Court stated:

> Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or [if it] forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*Agee*, 326 N.C. 542, 548, 391 S.E.2d 171, 174 (1990) (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985).

Here, the victim testified to defendant's statement during her account of the crime. In describing how she was sexually assaulted, the victim testified that defendant put his hand over her mouth and told her that "[I]f [she] told anybody what he [defendant] was going to do, he was going to hurt [her] like he hurt Koda." We conclude that defendant's statement here formed an "integral and natural part" of the victim's account of the crime and was "necessary to complete the story of the crime for the jury." *Cf. Agee, supra.* Accordingly, the trial court did not err in allowing defendant's statement.

## II.

[2] Defendant next contends that the trial court erred in allowing the State's medical expert, Dr. Martha K. Sharpless, to testify to statements the victim made to her about the incident during a physical

examination of the victim. Defendant contends that Dr. Sharpless' testimony was inadmissible hearsay because the victim's statements to Dr. Sharpless were not made for the purposes of medical diagnosis or treatment as required by G.S. 8C-1, Rule 803(4).

We need not address whether the victim's statements to Dr. Sharpless fall within the "Statements for Purposes of Medical Diagnosis" exception to the hearsay rule because the trial court admitted Dr. Sharpless' testimony only for the limited purpose of corroborating the in-court testimony of the victim. "Evidence which is inadmissible for substantive or illustrative purposes may nevertheless be admitted as corroborative evidence in appropriate cases when it tends to enhance the credibility of a witness." *State v. Burns*, 307 N.C. 224, 229, 297 S.E.2d 384, 387 (1982). Dr. Sharpless' testimony essentially corroborated the earlier testimony of the victim, including the defendant's threat to the victim. We also note that defendant objected "except for purposes of corroboration." The trial court then properly instructed the jury that Dr. Sharpless' testimony was only to be received "for the limited and narrow purpose of corroborating the in-court testimony" of the victim. Accordingly, this assignment of error is overruled.

III.

**[3]** Defendant next contends that the trial court erred in permitting the State to impeach defendant by asking defendant whether he had a midnight curfew. The following exchange took place between the assistant district attorney and defendant during defendant's cross-examination:

> Q. At some point Chris [Creed] and Danielle [Johnson] left; is that right?
>
> A. Yes, sir. I don't know where they were going.
>
> Q. What time was it by then?
>
> A. I couldn't tell you what time it was. They was getting ready to go somewhere and Chris just said stay here and talk to Donna till we get back.
>
> Q. It was after midnight by then, wasn't it?
>
> A. I don't know what time it was. I'm not sure.
>
> Q. Could it have been after midnight?

MR JENNINGS: Object. Asked and answered, Your Honor.

THE COURT: Overruled.

A. It might have been. It might not have been. I do not know.

Q. You weren't concerned at all about what time it was?

A. No, sir. I don't see what reason there was to be.

Q. Well, didn't you have a midnight curfew?

A. Huh?

MR. JENNINGS: Object.

Q. Didn't you have a midnight curfew?

THE COURT: Overruled.

A. Not that I remember. I don't remember having no midnight curfew.

At the time of the incident, defendant was subject to a midnight curfew as a condition of his pre-trial release. Since defendant testified that he did not remember having a midnight curfew, the State threatened, out of the presence of the jury, to impeach defendant with his pre-trial release papers which indicated that defendant was under a "12:00 midnight curfew Friday and Saturday." The trial court conducted a voir dire out of the presence of the jury and allowed the State to show defendant the pre-trial release papers and refresh defendant's memory that he was indeed under a midnight curfew at the time of the incident. Defendant contends this constituted improper impeachment under Rule 608(b) of the North Carolina Rules of Evidence. We disagree.

Rule 608(b) provides:

> (b) *Specific instances of conduct.*—Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence.

Here, extrinsic evidence was not used to impeach defendant before the jury. Defendant was shown his pre-trial release papers outside of the presence of the jury. Defendant's cross-examination in the presence of the jury resumed as follows:

Q. (By Mr. Neumann) [Defendant], I'll ask you again if you've had some time to reflect on it whether you were under a midnight curfew on this particular night?

A. Yes, sir. My memory is refreshed.

Q. I believe you earlier said you weren't concerned with what time it was?

A. No, sir. I had no business —

MR. JENNINGS: Object.

A. — no reason to.

THE COURT: Overruled.

Q. So, you didn't care if you missed your midnight curfew or not, did you?

A. I didn't remember having one.

Q. You remember now, don't you?

A. Yes, sir.

No extrinsic evidence of defendant's pre-trial release was admitted before the jury. Accordingly, we conclude that defendant was not improperly impeached under Rule 608(b). Defendant also contends that the question "Didn't you have a midnight curfew," violated the court's ruling on defendant's motion in limine to exclude references to defendant's prior arrest, indictment, trial and acquittal of the murder of Koda Smith. However, since there is no indication that the jury was aware of defendant's prior arrest, we conclude that the jury could not have reasonably inferred that defendant, at age 17, was under anything other than a traditional parental curfew during the night in question.

IV.

[4] Defendant next contends that the trial court erred in excluding the testimony of defendant's expert psychologist, Dr. John F. Warren, on the suggestibility of child witnesses. We disagree.

Dr. Warren was certified by the trial court as an expert in clinical psychology and human behavior. Defendant offered Dr. Warren's testimony on the phenomenon of suggestibility. On voir dire, Dr. Warren testified that suggestibility is the "altering or the creation of memo-

ries through questions, gestures, other stimuli that happen around the person who is doing the remembering." Dr. Warren would have also testified that suggestibility is significant in young children or intellectually impaired persons. Defendant offered Dr. Warren's testimony to show that the victim's memory may have been created or altered through suggestion.

Under Rule 702 of the North Carolina Rules of Evidence, expert testimony is admissible if it will appreciably help the jury. *State v. Knox*, 78 N.C. App. 493, 495, 337 S.E.2d 154, 156 (1985). In applying this test, the trial court must balance the probative value of the testimony against its potential for prejudice, confusion, or delay. *Id.*; G.S. 8C-1, Rule 403. The trial court has wide discretion in determining whether expert testimony is admissible. *Knox*, 78 N.C. App. at 495, 337 S.E.2d at 156.

Here, Dr. Warren testified that he did not ever examine or evaluate the victim or anyone else connected with this case. On these facts, the trial court could properly conclude that the probative value of Dr. Warren's testimony was outweighed by its potential to prejudice or confuse the jury. Similarly, we are not persuaded that Dr. Warren's testimony would have "appreciably aided" the jury since he had never examined or evaluated the victim. Accordingly, we conclude that the trial court did not abuse its discretion in excluding Dr. Warren's testimony.

V.

[5] Defendant's next three contentions concern the sentencing phase of the trial. Defendant first contends that the trial court erred in failing to find defendant's immaturity as a mitigating factor. G.S. 15A-1340.4(a)(2)e allows a defendant's immaturity to be considered as a mitigating factor if the defendant's immaturity "at the time of commission of the offense significantly reduced his culpability for the offense." At the time of the offense, defendant was seventeen years old and a high school drop out. In refusing to find defendant's immaturity as a mitigating factor, the trial court stated, "This is a man that just went out and got married and took on the responsibilities for a wife and two children. . . . That doesn't smack of immaturity." Defendant contends that the trial court erred in evaluating defendant's immaturity at the time of trial instead of at the time of the commission of the offense. We disagree.

A trial court has wide discretion in determining the existence of mitigating factors because it "observes the demeanor of the witness and hears the testimony." *State v. Heatwole*, 333 N.C. 156, 163, 423 S.E.2d 735, 739 (1992). Immaturity as a statutory mitigating factor requires two inquiries: One as to immaturity and one as to the effect of that immaturity upon culpability. *State v. Moore*, 317 N.C. 275, 280, 345 S.E.2d 217, 221 (1986). Age alone is insufficient to support this factor. *Id.* The fact that defendant is seventeen years old, without more, does not classify defendant as immature under the statute. *Id.* As to the second inquiry, defendant presented no evidence on the effect of his immaturity upon his culpability for the offense. It is within the trial court's discretion to assess whether a defendant's immaturity significantly reduced his culpability for the offense. *Id.* at 281, 345 S.E.2d at 221. Accordingly, we conclude that the trial court did not abuse its discretion in failing to find defendant's immaturity as a mitigating factor.

**[6]** Second, defendant contends the trial court erred in finding as an aggravating factor that defendant committed the offenses while on pre-trial release for a felony charge. G.S. 15A-1340.4(a)(1)k. Defendant contends that since he has been acquitted of the prior charge, the fact that he was on pre-trial release during the commission of these offenses cannot be used to aggravate his sentence. Based on *State v. Webb*, 309 N.C. 549, 308 S.E.2d 252 (1983), we disagree.

The rationale underlying G.S. 15A-1340.4(a)(1)k is that, "[o]ne demonstrates disdain for the law by committing an offense while on release pending trial of an earlier charge." *Webb*, 309 N.C. at 559, 308 S.E.2d at 258.

> Whether or not one [on pre-trial release] is in fact guilty, it is to be expected that he would, while the question of his guilt is pending, be particularly cautious to avoid commission of another criminal offense. If he is not and is convicted of another offense, his status as a pretrial releasee in a pending case is a legitimate circumstance to be considered in imposing sentence.

*Id.* The fact that defendant was subsequently acquitted of the prior charge does not undermine the rationale for finding as an aggravating factor that defendant committed this offense while on pre-trial release. Accordingly, the trial court did not abuse its discretion in this regard.

[7] Finally, defendant contends that the trial court erred in imposing a sentence greater than the presumptive term. Defendant contends that the trial court erred in finding that the one aggravating factor of committing the offenses while on pre-trial release outweighed the one mitigating factor that defendant had no prior record of convictions. Defendant's contention is without merit. The task of weighing aggravating and mitigating factors is discretionary and is not simply a matter of mathematics. *State v. Melton*, 307 N.C. 370, 380, 298 S.E.2d 673, 680 (1983). The trial court may properly emphasize one factor over another in weighing these factors. *Id.* We conclude that the trial court did not abuse its discretion in sentencing defendant.

## VI.

For the reasons stated, we conclude that defendant received a fair trial free from prejudicial error.

No error.

Judges MARTIN and McCRODDEN concur.