McGEE, Chief Judge.
 

 *300
 
 Robert T. Walston, Sr. ("Defendant") was indicted for offenses involving two sisters, E.C. and J.C. (together "the children"),
 
 [1]
 
 alleged to have occurred between June 1988 and October 1989, when J.C. was three to four years old and E.C. was six to seven years old. In 1994, the children were interviewed by "law enforcement and/or Social Services[.]" The children did not report the offenses for which Defendant was later convicted. The children testified at Defendant's 2012 trial, stating that each had informed the other in January 2001 of having been sexually assaulted by Defendant during the June 1988 to October 1989 time period. They also informed their parents at that time, but law enforcement was not contacted.
 

 J.C. decided to contact law enforcement to report the alleged offenses "near the end of 2008." Indictments against Defendant were filed on 12 January 2009, with superseding indictments filed on 14 November 2011. At the time of Defendant's trial, E.C. was twenty-nine years old, and J.C. was twenty-seven years old.
 

 Defendant was convicted on 17 February 2012 of one count of first-degree sex offense, three counts of first-degree rape, and five counts of taking indecent liberties with a child. Defendant appealed, and this Court reversed and remanded for a new trial in part, and found no error in part.
 
 State v. Walston,
 

 229 N.C.App. 141
 
 ,
 
 747 S.E.2d 720
 
 (2013) ("
 
 Walston I
 
 ").
 

 *301
 
 In
 
 Walston I,
 
 we also determined that the trial court, in making its determination whether to admit certain expert testimony, had applied a version of N.C. Gen.Stat. § 8C-1, Rule 702 that had been superseded by amendment.
 
 Walston I,
 

 229 N.C.App. at 151-52
 
 ,
 
 747 S.E.2d at 728
 
 . Although this issue was not argued by Defendant on appeal, we instructed the trial court to apply the amended version of Rule 702 upon remand should it again need to rule on the admissibility of expert testimony.
 

 Id.
 

 The State petitioned our Supreme Court for discretionary review and review was granted, but only on the issues for which this Court had granted Defendant a new trial. The Supreme Court reversed the portions of
 
 Walston I
 
 wherein this Court granted Defendant a new trial, and remanded for this
 
 *849
 
 Court to address one specific issue.
 
 State v. Walston,
 

 367 N.C. 721
 
 , 732,
 
 766 S.E.2d 312
 
 , 319 (2014) ("
 
 Walston II
 
 "). In
 
 Walston II,
 
 our Supreme Court directed: "On remand the Court of Appeals should address fully whether the trial court's application of the former expert witness standard [ Rule 702 ] was prejudicial error."
 

 Id.
 

 Defendant filed a motion on 5 January 2015 to withdraw our Supreme Court's opinion in
 
 Walston II,
 
 arguing that the
 
 Walston II
 
 opinion "fail [ed] to address properly presented issues, [was] based on an incomplete review of the record and interpret[ed] the Rules of Evidence so as to violate the Constitution." Our Supreme Court denied Defendant's motion to withdraw
 
 Walston II
 
 and this Court conducted the review directed by our Supreme Court. We determined, by opinion filed 17 February 2015, that Defendant had not been prejudiced by the application of the former expert witness standard.
 
 State v. Walston,
 
 --- N.C.App. ----, --- S.E.2d ----,
 
 2015 WL 680240
 
 (Feb. 17, 2015) ("
 
 Walston III
 
 ").
 

 Defendant petitioned our Supreme Court for discretionary review on 23 March 2015, arguing:
 

 This Court granted the State's Petition for Discretionary Review of the two issues the Court of Appeals granted relief on. It reversed the Court of Appeals on both issues. It denied [D]efendant's Petition for Discretionary Review of the defense expert testimony issue. It remanded the case to the Court of Appeals to address an issue never raised at trial: whether the trial judge employed the "old" Rule 702 or the amended one. The lower court held that, because the judge excluded the evidence under the old, more lenient rule, he would have excluded it under the new, more stringent one.
 

 *302
 
 The issue not reached by the Court of Appeals was the one raised at trial:
 
 whether an expert who has not examined the complaining witness is excludable as a witness on that basis.
 
 Neither appellate court has addressed that issue.
 

 The opinion of the Court of Appeals is also flawed in that it found no error because the trial court would have excluded the proffered evidence under either version of Rule 702. However the issue on appeal is not what the trial court would have done but whether it committed error. The opinion of the Court of Appeals does not address, much less explain, why it was not error for the trial court to exclude [D]efendant's evidence. [Emphasis added, footnote omitted].
 

 In its response to Defendant's 23 March 2015 petition, the State noted that the issue of the trial court's exclusion of Defendant's expert witness was not one included in the State's 9 September 2013 petition for discretionary review in response to
 
 Walston I,
 
 and that our Supreme Court denied Defendant's 23 September 2013 conditional petition for discretionary review seeking review of that issue. The State further argued that Defendant had not articulated any proper basis for discretionary review as mandated by N.C. Gen.Stat. § 7A-31(c) and that, because this Court answered the question it was directed by our Supreme Court to answer, there was no error.
 

 By order entered 24 September 2015, our Supreme Court declined to address the merits of Defendant's petition itself and ruled:
 

 [D]efendant's petition for discretionary review is allowed for the limited purpose of remanding this case to the Court of Appeals to (1) determine, in light of our holding and analysis in
 
 State v. King,
 

 366 N.C. 68
 
 ,
 
 733 S.E.2d 535
 
 (2012) (applying North Carolina Rules of Evidence 403 and 702 ), and other relevant authority, if the trial court's decision to exclude the expert testimony was an abuse of discretion and, if so, (2) determine if the erroneous decision to exclude the testimony prejudiced [D]efendant.
 

 In response to our Supreme Court's 28 September 2015 order, this Court vacated the certification of
 
 Walston III.
 
 We now address our Supreme Court's new mandate.
 

 *303
 
 I.
 

 Relevant to the issue currently before us, Defendant argues that the trial court, based on the erroneous belief that the excluded testimony was not admissible as a matter of law, improperly excluded Defendant's testimony of his expert witness, Dr. Moira
 
 *850
 
 Artigues ("Dr. Artigues"), who would have given expert testimony concerning the suggestibility of children. We agree.
 

 " '[O]rdinarily, whether a witness qualifies as an expert is exclusively within the discretion of the trial judge.' However, where an appeal presents questions of statutory interpretation, full review is appropriate, and a trial court's conclusions of law are reviewable
 
 de novo.
 
 "
 
 FormyDuval v. Bunn,
 

 138 N.C.App. 381
 
 , 385,
 
 530 S.E.2d 96
 
 , 99 (2000) (citations omitted);
 
 see also
 

 Cornett v. Watauga Surgical Grp.,
 

 194 N.C.App. 490
 
 , 493,
 
 669 S.E.2d 805
 
 , 807 (2008). Defendant argues that the trial court erroneously concluded that this Court's opinion in
 
 State v. Robertson,
 

 115 N.C.App. 249
 
 ,
 
 444 S.E.2d 643
 
 (1994), held that Dr. Artigues' testimony was inadmissible pursuant to Rule 702 as a matter of law because Dr. Artigues had not personally interviewed the children. Unfortunately, in the present case the trial court made no findings of fact or conclusions of law; it simply ruled that Dr. Artigues would not be allowed to testify, so we have no conclusions of law to review.
 

 In the present case, Defendant attempted to show that statements made by the children showed that there was a period of years following the alleged abuse when the children had no recollection of that alleged abuse. For instance, in an email to a family friend with counseling experience, E.C. stated that she had blocked out all memory of the alleged abuse for years:
 

 [DEFENSE COUNSEL:] [Reading from E.C.'s email:] Third paragraph [from email exchange]. Have you ever had this incident blocked out? Yes. I don't remember when it was blocked out or exactly what I remember-or when I remembered it but I know it came back to me in eighth grade. With the block I forgot many other childhood memories from this time. I have no other memories of [Defendant] either.
 

 [DEFENSE COUNSEL:] And was that true what you wrote there ... ?
 

 [E.C.:] At the time I wrote it, it was true.
 

 *304
 
 Concerning J.C., clinical records from a September 2001 session J.C. had at Albemarle Mental Health Center stated: "[J.C.] then reveal[ed] the fact that she was raped at age five and she did not remember this until she was in the seventh grade." J.C. testified regarding statements she had given to an investigator, as follows:
 

 [DEFENSE COUNSEL:] Do you recall telling [the investigator] during that first interview that you were sitting in science class and that you were learning how to use the microscope and that's what you believe started the memories was seeing a boy moving his legs in a chair in the way that [Defendant] used to do, is that what you told her?
 

 [J.C.:] Yes.
 

 [DEFENSE COUNSEL:] And how [long] had those memories been gone from your consciousness?
 

 [J.C.:] I knew-I don't know exactly how long.
 

 J.C. argued at trial that she had not actually blocked out memories of the alleged abuse, but had simply decided not to think about it. E.C. admitted that she had probably completely forgotten about the alleged abuse for up to two years. In any event, the question of whether the children had "lost" all memory of the alleged abuse for some period of time was, at a minimum, a contested issue at trial.
 

 Prior to trial, the State filed a motion to suppress Dr. Artigues' testimony, arguing:
 

 5. Due to the late disclosure, it is impossible for the State to secure an expert witness in less than 5 working days to rebut the defense's expert witness. Thus, the State request[s] the Court, pursuant to NCGS § 15A-910, to prohibit the defense from introducing said expert testimony.
 

 6. In the alternative, the State requests the Court to conduct a voir dir[e] hearing as to the admissibility of said expert testimony.
 

 a. The State contends that the proposed expert testimony is not relevant or admissible pursuant to Rule 703 and 403 as this is not a case involving "repressed" or "recovered" memories.
 

 b. In addition, the State contends the
 
 expert is not qualified pursuant to Rule 702 to testify as to
 
 "
 
 false
 

 *305
 

 memories being suggested, implanted or evoked,
 
 "
 
 specifically since the proposed expert
 

 *851
 

 witness has never examined or evaluated the two alleged victims.
 
 Further, the probative value of the testimony is substantially outweighed by its potential to prejudice or confuse the jury pursuant to Rule 403. [Emphasis added.]
 

 At the motions hearing, the trial court did not rule on the State's argument to exclude Dr. Artigues' testimony as a sanction pursuant to N.C. Gen.Stat. § 15A-910. The State then moved the trial court to exclude Dr. Artigues' testimony because the State contended this was not a "repressed memory case," based upon this Court's opinion in
 
 Robertson.
 
 The State contended
 
 Robertson
 
 mandated the exclusion of the testimony because Dr. Artigues had not personally examined either of the alleged victims. The following colloquy occurred between the trial court and the attorneys for Defendant and the State:
 

 [DEFENSE COUNSEL:] [Dr. Artigues was retained to] testify regarding the theory about repressed memory being generally unaccepted. And we think given the fact that it is a repressed memory case it will be reversible error to not allow us to attack that.
 

 THE COURT: What if I think it's not a repressed memory, then I shouldn't let the psychiatrist testify?
 

 [DEFENSE COUNSEL:] We have two areas. Obviously, Your Honor, if you think this has nothing to do with repressed memory then Your Honor may feel that any anti-repressed memory testimony will be no more relevant than any expert testimony in support of repressed memory. But we do have, have retained her for two issues, and
 
 the other issue is to testify about the suggestibility of memory and how being repeatedly told you were abused, especially telling a small child that over, many, many over a decade, telling somebody that can lead [to false memories.]
 
 [Emphasis added.]
 

 THE COURT: Why can't the psychiatrist testify to that?
 

 ....
 

 [THE STATE:] Your Honor, I do have a case-sounds like that Your Honor has ruled with respect to this expert can't testify to recovered or repressed memories. So then our second basis is about susceptibility. I would like to hand
 
 *306
 
 up two cases, Your Honor, one of them that is specifically on point, State versus Robertson, which is a Court of Appeals case,
 
 115 N.C.App. 249
 
 [
 
 444 S.E.2d 643
 
 ].
 

 ....
 

 [THE STATE:] And what happened in [the
 
 Robertson
 
 ] case, Your Honor, is that the defense had an expert on suggestibility, that the victim's memories have been created or altered or suggested to them in some way. And the Court said no, this expert can't testify for several reasons. One of them is just that the probative value was not outweighed by the prejudicial effect. But most importantly the reason the Judge found this is because the expert never talked to the victims, examined the victims in any way, shape or form, which is just like this case.
 

 The State further argued: "[T]he
 
 Robertson
 
 Court ... specifically said that ... the trial court did not err ... by excluding the testimony of the defense expert psychologist on suggestibility of the child witness where the witness had never been examined or evaluated" by the defense expert.
 

 In the case before us, the trial court then requested of Defendant's counsel: "Let's get to the issue where your witness can testify in light of fact that she ... never interviewed or spoke with the victim in this case." Defense counsel argued to the trial court that there was evidence indicating the children's mother and "grandmother"
 
 [2]
 
 had pressured the children in the years following the alleged incidents to admit they had been molested by Defendant. Defendant's counsel stated that he believed, in light of the evidence and the possibility that suggestions from the mother and "grandmother" could have resulted in false "memories" of sexual assault, that Dr. Artigues should be allowed to testify concerning general issues of the
 
 *852
 
 susceptibility of children. The trial court then asked Defendant: "Did [Dr. Artigues] talk to anybody else involved in the case other than you?.... Had she talked with anyone else?" Defendant's counsel answered that, to his knowledge, Dr. Artigues had not personally interviewed the children or anyone else involved. The trial court then ruled that it was "going to deny the testimony of the expert psychologist."
 

 At the motions hearing, the trial court ruled-based only upon the State's arguments, and defense counsel's proffer of what Dr. Artigues'
 

 *307
 
 testimony would be-that Defendant could not call Dr. Artigues to testify. The trial court did not articulate the basis for its decision. Later, following the close of the State's evidence at trial, a
 
 voir dire
 
 was conducted to preserve Dr. Artigues' excluded opinion testimony for appellate review. During this
 
 voir dire,
 
 the trial court cut short testimony concerning Dr. Artigues' qualifications, stating: "I'm sure she's an expert in the field she's purported to be an expert in. Let's get to the issue at hand."
 

 Following
 
 voir dire,
 
 Defendant moved for the trial court to reconsider its ruling and admit the testimony, stating "for the purposes of the record and for no other reason, we'd ask the Court to reconsider its ruling[.]" The State argued: "As it applies to the suggestibility, I remind Your Honor the Embler [case],
 
 [3]
 
 which specifically says that this type of expert testimony does not come in when the expert has not evaluated the victim but Your Honor obviously heard that didn't take place in this case." The trial court then stated: "I'm not inclined to change my ruling that this evidence should not come before the jury."
 

 From the State's motion to suppress and the discussions at trial, it is apparent that the trial court excluded Dr. Artigues' testimony for two reasons. First, the trial court seemed to have decided that this case was not a "repressed memory" case and, therefore, testimony concerning the reliability of recovered memories was not relevant. The trial court asked Defendant's counsel at the hearing: "What if I think it's not a repressed memory, then I shouldn't let the psychiatrist testify?" Defendant and the State understood this comment to mean the trial court was prohibiting "repressed memory" testimony for that reason. Second, the trial court seemed to agree with the State's argument that the trial court could not allow an expert witness to testify in that situation, even about the general susceptibility of children to suggestion, if that expert had not interviewed the alleged victims. The State provided the trial court with
 
 Robertson
 
 in support of this proposition,
 
 [4]
 

 In
 
 Robertson,
 
 our Court reasoned concerning the defendant's proposed expert witness:
 

 Dr. Warren was certified by the trial court as an expert in clinical psychology and human behavior. Defendant
 
 *308
 
 offered Dr. Warren's testimony on the phenomenon of suggestibility. On
 
 voir dire,
 
 Dr. Warren testified that suggestibility is the "altering or the creation of memories through questions, gestures, other stimuli that happen around the person who is doing the remembering." Dr. Warren would have also testified that suggestibility is significant in young children or intellectually impaired persons. Defendant offered Dr. Warren's testimony to show that the victim's memory may have been created or altered through suggestion.
 

 ....
 

 Here, Dr. Warren testified that he did not ever examine or evaluate the victim or anyone else connected with this case.
 
 On these facts,
 
 the trial court
 
 could
 
 properly conclude that the probative value of Dr. Warren's testimony was outweighed by its potential to prejudice or confuse the jury. Similarly, we are not persuaded that Dr. Warren's testimony would have "appreciably aided" the jury since he had never examined or evaluated the victim. Accordingly, we conclude that the trial court did
 
 *853
 
 not abuse its discretion in excluding Dr. Warren's testimony.
 

 Robertson,
 

 115 N.C.App. at 260-61
 
 ,
 
 444 S.E.2d at 649
 
 (emphasis added). This Court in
 
 Robertson
 
 neither created nor recognized a
 
 per se
 
 rule that expert opinion concerning the general suggestibility of children may only be given at trial if the testifying expert has examined the child or children in question. This Court simply held that the trial court had not abused its discretion by excluding the proposed expert testimony pursuant to Rule 403 of the North Carolina Rules of Evidence. Neither
 
 Robertson
 
 nor any other North Carolina appellate opinion we have reviewed recognizes any such
 
 per se
 
 rule. We hold that expert opinion regarding the general reliability of children's statements may be admissible so long as the requirements of Rules 702 and 403 of the North Carolina Rules of Evidence are met. As with any proposed expert opinion, the trial court shall use its discretion, guided by Rule 702 and Rule 403, to determine whether the testimony should be allowed in light of the facts before it. This Court in
 
 Robertson
 
 merely agreed that the trial court had not abused its discretion based upon the facts of that case.
 

 Id.
 

 As our Supreme Court has stated, expert opinion testimony is useful in assisting the trier of fact in understanding concepts not generally understood by laypersons,
 
 including
 
 when those concepts are relevant in assessing the credibility of alleged child victims of sexual abuse:
 

 *309
 
 Where scientific, technical, or other specialized knowledge will assist the fact finder in determining a fact in issue or in understanding the evidence, an expert witness may testify in the form of an opinion, N.C.R. Evid. 702, and the expert may testify as to the facts or data forming the basis of her opinion, N.C.R. Evid. 703. The testimony of ... [expert] witnesses, if believed, could help the jury understand the behavior patterns of sexually abused children and assist it in assessing the credibility of the victim.
 

 State v. Kennedy,
 

 320 N.C. 20
 
 , 32,
 
 357 S.E.2d 359
 
 , 366 (1987).
 

 Further, this Court has held that generalized expert opinion concerning the reliability of child witnesses is permissible.
 
 See
 

 In re Lucas,
 

 94 N.C.App. 442
 
 , 450,
 
 380 S.E.2d 563
 
 , 568 (1989) (doctor's opinion "related to the general credibility of children, not credibility of the child in question" who reported sexual abuse was admissible and his "testimony was more probative than prejudicial under Rule 403");
 
 State v. Oliver,
 

 85 N.C.App. 1
 
 , 12,
 
 354 S.E.2d 527
 
 , 534 (1987) (a pediatrician is in "a better position than the trier of fact to have an opinion on the credibility of children in general who report sexual abuse");
 
 State v. Jenkins,
 

 83 N.C.App. 616
 
 , 624,
 
 351 S.E.2d 299
 
 , 304 (1986). In discussing the admissibility of an expert witness' opinion, this Court has reasoned:
 

 [U]ntil now, our courts have not been presented with the question of admissibility of expert testimony on the credibility of children in general who relate stories of sexual abuse.
 

 Dr. Scott testified that children don't make up stories about sexual abuse and that the younger the child, the more believable the story.
 
 [5]
 
 He did not testify to the credibility of
 
 the victim
 
 but to the general credibility of children who report sexual abuse. Since such testimony was Dr. Scott's interpretation of facts within his expertise, and not his opinion upon the credibility of the specific victim, it is not excluded by Rule 405. The proper test of its admissibility is whether he was in a better position to have an
 
 *310
 
 opinion than the jury. In other words, was Dr. Scott's opinion helpful to the jury? We determine that it was.
 

 The nature of the sexual abuse of children ... places lay jurors at a disadvantage. Common experience generally does not provide a background for understanding the special traits of these witnesses. Such an understanding is relevant as it would help the jury determine the credibility of a child who complains of sexual abuse. The
 
 *854
 
 young child ... subjected to sexual abuse may be unaware or uncertain of the criminality of the abuser's conduct. Thus, the child may delay reporting the abuse. In addition, the child may delay reporting the abuse because of confusion, guilt, fear or shame. The victim may also recant the story or, particularly because of youth ..., be unable to remember the chronology of the abuse or be unable to relate it consistently.
 

 Dr. Scott is a pediatrician. He testified he had been a member of the Child Medical Examiners Program for child abuse from its beginning in the early 1970's and since that time had interviewed approximately one to two children each month who had allegedly been sexually abused. Dr. Scott testified he had devoted a portion of his practice to the examination of children involved in sexual abuse and that he had kept abreast of information in that area through professional journals. We find that Dr. Scott was in a better position than the trier of fact to have an opinion on the credibility of children in general who report sexual abuse. His opinion is therefore admissible under Rule 702.
 

 ....
 

 Dr. Scott's opinion was helpful to the jury in determining the victim's credibility and was therefore probative.
 

 The jury had the opportunity to see and hear the prosecuting witness both upon direct and cross-examination. The defendants had ample opportunity to discount Dr. Scott's testimony both by cross-examination and presentation of their own expert witness had they chosen to do so. We find the trial court did not abuse its discretion by admitting the testimony under Rule 403.
 

 As the testimony was admissible under Rule 702 and Rule 403, we find the trial court did not err in allowing Dr. Scott
 
 *311
 
 to testify on the credibility of children in general who report sexual abuse.
 

 Oliver,
 

 85 N.C.App. at 11-13
 
 ,
 
 354 S.E.2d at 533-34
 
 . This reasoning applies equally to both defendant's and the State's experts. As this Court, citing the United States Supreme Court, has noted:
 

 Accuracy in criminal proceedings is a particularly compelling public policy concern:
 

 The private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is almost uniquely compelling. Indeed, the host of safeguards fashioned by this Court over the years to diminish the risk of erroneous conviction stands as a testament to that concern. The interest of the individual in the outcome of the State's effort to overcome the presumption of innocence is obvious and weighs heavily in our analysis.
 

 Ake v. Oklahoma,
 

 470 U.S. 68
 
 , 78 [
 
 105 S.Ct. 1087
 
 , 1093]
 
 84 L.Ed.2d 53
 
 , 63 (1985). The United States Supreme Court has stated that a defendant on trial has a greater interest in presenting expert testimony in his favor than the State has in preventing such testimony:
 

 The State's interest in prevailing at trial-unlike that of a private litigant-is necessarily tempered by its interest in the fair and accurate adjudication of criminal cases....
 

 Ake,
 

 470 U.S. at 79
 
 [
 
 105 S.Ct. at 1094
 
 ],
 
 84 L.Ed.2d at 63-64
 
 .
 

 State v. Cooper,
 

 229 N.C.App. 442
 
 , 448-49,
 
 747 S.E.2d 398
 
 , 404 (2013),
 
 disc. review denied,
 

 367 N.C. 290
 
 ,
 
 753 S.E.2d 783
 
 (2014).
 

 "The right to offer the testimony of witnesses ... is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."
 

 *312
 

 Cooper,
 

 229 N.C.App. at 452
 
 , 747 S.E.2d at 406 (citing
 
 Taylor v. Illinois,
 

 484 U.S. 400
 
 , 408-09,
 
 108 S.Ct. 646
 
 , 653,
 
 98 L.Ed.2d 798
 
 , 810 (1988) (citations omitted)).
 

 It is true that the expert witness in
 
 Oliver
 
 had, as an expert called by the State, interviewed or examined the alleged victim. However, defendants will rarely have access to prosecuting witnesses in order for their experts to personally examine or interview those witnesses.
 

 *855
 

 State v. Fletcher,
 

 322 N.C. 415
 
 , 419,
 
 368 S.E.2d 633
 
 , 635 (1988). Defendant's expert in this case had no right to access the prosecuting witnesses absent their consent. The ability of a defendant to present expert witness testimony on his behalf cannot be subject to the agreement of the prosecuting witness, for that agreement will rarely materialize.
 

 This Court has previously suggested that examination of an alleged child victim of sexual assault is not required for an expert to testify concerning the child's likely sexual behavior, and the behavior of children in general.
 
 State v. Jones,
 

 147 N.C.App. 527
 
 , 541-43,
 
 556 S.E.2d 644
 
 , 654 (2001),
 
 questioned on other grounds by
 

 In re M.L.T.H.,
 

 200 N.C.App. 476
 
 ,
 
 685 S.E.2d 117
 
 (2009) ;
 
 see also
 

 State v. Stancil,
 

 355 N.C. 266
 
 , 267,
 
 559 S.E.2d 788
 
 , 789 (2002) ("an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith"). In
 
 Jones,
 
 the testifying expert, Dr. Cooper, in forming her opinion, could only rely on "the [deceased] victim's medical records, the police investigation reports, the autopsy report from the State Chief Medical Examiner, Dr. John Butts, and autopsy photographs. Dr. Cooper also testified that she had taken a personal history from the victim's grandmother 'for the purpose of obtaining more medical information.' "
 
 Jones,
 

 147 N.C.App. at 541-42
 
 ,
 
 556 S.E.2d at 653
 
 . Based upon those records, Dr. Cooper, the expert in
 
 Jones
 
 testified
 

 that the description of [the victim] having seduced, uh, a youth offender is extremely out of character. You do not have a child who has given any indication that she is sexually promiscuous or that she is precocious in any way as far as her sexual being is concerned.... This is very out of char-would be-have been very out of character for a child who has all of the other behaviors and symptoms that we see in this child who carries dolls in her little backpack and who plays with dolls in the evenings and who has sleepovers with children three and four years younger than she is. That would be extremely out of character.
 

 Jones,
 

 147 N.C.App. at 543
 
 ,
 
 556 S.E.2d at 654
 
 . Dr. Cooper, the expert in
 
 Jones,
 
 was allowed to testify that, based upon medical records and
 
 *313
 
 background information obtained from the victim's grandmother, she believed it was unlikely that the victim would have acted out in a sexual nature towards the defendant.
 

 Id.
 

 In the case before us, Dr. Artigues had background information from statements made by the children, their mother, and their "grandmother," concerning the children's memories related to the alleged event, and the behavior of their mother, "grandmother," and themselves with regard to the allegations that Defendant had abused the children. This information was contained in records from the Department of Social Services and Sheriff's Department related to the 1994 investigation of Defendant for those alleged acts, counselor's notes taken in the course of assessing J.C., police reports of interviews with the children and other witnesses, and emails between the children and a family friend with some counseling experience.
 

 In addition, the interviews with the alleged victims in
 
 Oliver
 
 and
 
 Jenkins,
 
 which could have informed the experts' opinions concerning the credibility of the prosecuting witnesses in those cases, could only minimally inform their opinions concerning the credibility of children
 
 in general.
 
 General opinions related to credibility and suggestibility are informed by ongoing practice and research, not based upon interviews with a particular alleged victim of sexual assault. If expert testimony concerning general traits, behaviors, or phenomena can be helpful to the trier of fact-and it satisfies the requirements of Rule 702 and Rule 403 -it is admissible. This is true whether or not the expert has had the opportunity to personally interview the prosecuting witness.
 

 Of course, expressing an opinion concerning the
 
 truthfulness
 
 of a prosecuting witness is generally forbidden.
 
 Oliver,
 

 85 N.C.App. at 10
 
 ,
 
 354 S.E.2d at
 
 533 ;
 
 Jenkins,
 

 83 N.C.App. at 624-25
 
 ,
 
 351 S.E.2d at 304
 
 . However, expert opinion relating to the behavior of an alleged victim, in order to assist the trier of fact in assessing credibility, is permitted.
 
 Kennedy,
 

 320 N.C. at 32
 
 ,
 
 357 S.E.2d at 366
 
 ("[M]ental and emotional state of the victim before, during, and after the offenses as well as her intelligence, although not elements of the crime, are relevant factors to be considered by the jury in arriving
 
 *856
 
 at its verdicts. Any expert testimony serving to enlighten the jury as to these factors is admissible under Rule 702 of the North Carolina Rules of Evidence." And, the "testimony of both of these [expert] witnesses, if believed, could help the jury understand the behavior patterns of sexually abused children and assist it in assessing the credibility of the victim.");
 
 Jones,
 

 147 N.C.App. at 543
 
 ,
 
 556 S.E.2d at 654
 
 . It is not required that the expert conduct an interview with the alleged victim for this kind of testimony to be admitted.
 
 *314
 
 In the present case, Defendant's argument at trial was not that the children were lying, but that their alleged memories of abuse were in reality the result of repeated suggestions from their mother and "grandmother" that Defendant had abused them. In support of this argument, Defendant contended that the evidence before the trial court was more consistent with false memories implanted through suggestion than with recovered memories that had been repressed. Dr. Artigues' proffered testimony was directly relevant to this defense, whether or not the State was classifying the case as one involving repressed memories. Dr. Artigues' testimony would have also supported the idea that the children's alleged memories had been the result of repeated suggestion even if the jury believed the children never "forgot" that they had allegedly been abused by Defendant.
 

 Dr. Artigues testified on
 
 voir dire:
 
 "In my opinion there were a lot of references in the discovery to repressed memory[.]" Dr. Artigues based her opinion on statements made by the children in their emails; written statements of friends and family; and police and medical reports. Dr. Artigues testified as follows concerning the circumstances surrounding how E.C. and J.C. appeared to have forgotten, then remembered, the alleged events: "Appears to me this is very consistent with [the concept of] repressed memory. There are numerous references to this being a memory that was not in [conscious] awareness until a given point in time." E.C. agreed in her testimony that she must have lost memory of the alleged abuse for approximately two years. Whether J.C. had ever "forgotten" about the alleged abuse was a contested issue at trial. There was evidence, both forecast before trial and brought out at trial, supporting Defendant's and Dr. Artigues' opinions that the events leading up to the charges against Defendant were consistent with facts alleged in recovered memory cases.
 

 Dr. Artigues testified regarding her opinion concerning the validity of "repressed memory" as a psychological phenomenon:
 

 Repressed memory is an idea that goes back to Sigmund Freud. Freud was treating a lot of women that he diagnosed with hysteria and many of them talked in great detail about memories of being sexually abused and after years and years of this Freud began to think maybe these memories had been repressed and came back later. But even at the end of his career, Freud himself said he couldn't support the idea of repression anymore. Then it started being studied, gosh, it's been studied for 60 years. Researchers try to get people to repress memory unsuccessfully. It has
 
 *315
 
 essentially been defunct in the scientific community or is not considered scientifically valid. There is no empirical data to support it. In fact, all of the research, vast majority says that you can create memory that is not true in people. It's been done hundreds and hundreds of times. You can implant memories, you can influence memories through suggestion. They have done this with research subjects over and over again. The American Psychological Association has taken a stand saying that they don't put stock in repressed memories because of the lack of scientific data to support that. So in general, there is no data to support repressed memories and it's not accepted in the scientific community.
 

 Dr. Artigues further testified on
 
 voir dire
 
 concerning her opinion regarding why the children may have believed they remembered being sexually assaulted by Defendant after periods of time in which they seemed to have forgotten these alleged incidents:
 

 [DR. ARTIGUES:] [W]hat influenced my opinion about that was seeing that [their mother] had grilled
 
 [6]
 
 the children, that she
 
 *857
 
 had told them, I will be here for you if you ever-or if you're ready to disclose this, that shortly after that they were shown a good touch, bad touch video, that the [ir] grandmother figure ... had cussed [J.C.] out for not disclosing, which applies a lot of emotional pressure to a child. That in 1994 DSS did an investigation in which both girls were interviewed by law enforcement. Again, we have these children being sexualized, is what we call it in therapist lingo, meaning they are given an identity around this claim that they have somehow been sexually abused or sexually harmed, which may not be true. But this is such a powerful influence and it keeps happening in their lives that they begin to take it on as true. It was also noted in [another witness'] statement that [their mother] talked about it frequently, that she'd talked about it over the years. There was a mention in the discovery that [their mother] had mentioned it at the post office to others. That
 
 *316
 
 [their mother] said, I knew it as soon as the girls made this disclosure. So it looked to me as though there were many things that happened that could have influenced memory and many ways in which emotional pressure was applied to these very young children that could result in the production of memories that are not true.
 

 ....
 

 [Researchers] can get [people] to believe that they were lost in a mall, get them to believe that many things happened to them in childhood through suggestion that simply were not true. The other thing the research showed was that over time the subjects become more confident in their stories and the stories become more detailed. So even in the research setting they would interview the research subject the first time and they would give the outline of memory that [had] been implanted. But then later the research subject interviewed the second time would provide more details. So what this illustrates is that memory is not a tape recorder in our brain. There's not a location in the brain for memory. Memory is stored all throughout our brain and thus cannot help but be influenced by other things. Memory is actually a recent production of a lot of things that are going on in our brain and highly suggestible to influence. One other thing I would mention is this has also been studied extensively in terms of eyewitness testimony, how they can be influenced. There have been many, many studies about memory and showing how memory reliability can be pretty shaky.
 

 [DEFENSE COUNSEL:] Did you find, in reviewing the discovery, that the stories, the description that each of the ... girls gave regarding incident became more detailed, appeared to become more elaborate each time?
 

 [DR. ARTIGUES:] Yes, it did.
 

 [DEFENSE COUNSEL:] In your opinion, would this be consistent with a memory that has been suggested or invoked by some outside influences?
 

 [DR. ARTIGUES:] It is consistent with that, yes.
 

 The State's cross-examination of Dr. Artigues focused on the fact that she had not personally interviewed the children and, therefore,
 
 *317
 
 could not know the context of the children's comments regarding the nature of their memories. Following
 
 voir dire,
 
 Defendant moved: "For the purposes of the record and for no other reason, we'd ask the Court to reconsider its ruling[.]" The State again argued that the case was not a "repressed memory" case and that the trial court could not legally allow Dr. Artigues to testify about the susceptibility of the children, or children in general, to implanted memories because Dr. Artigues had "not evaluated the victim[s.]" The trial court stated that it would not change its ruling, which appears to have been based upon its erroneous belief that, as a matter of law, it could not allow Dr. Artigues' expert testimony because she had never examined the children.
 

 In the absence of any findings of fact or conclusions of law explaining the rationale of the trial court in making its ruling excluding Dr. Artigues' testimony, and in light of the discussions at trial, we find that the trial
 
 *858
 
 court improperly excluded Dr. Artigues' testimony based upon the erroneous belief that her testimony was inadmissible as a matter of law. As discussed above, it was not required that Dr. Artigues personally examine the children in order to testify as she did in
 
 voir dire.
 
 Because the trial court excluded Dr. Artigues' testimony based upon an erroneous understanding of law, we reverse Defendant's conviction and remand for a new trial. Should Defendant seek to introduce similar expert testimony, the trial court shall make its ruling based on our analysis above, and further consider additional factors discussed below.
 

 II.
 

 We now address the mandate of our Supreme Court to review the ruling of the trial court in light of
 
 State v. King,
 

 366 N.C. 68
 
 ,
 
 733 S.E.2d 535
 
 (2012) ("
 
 King II
 
 "). Our Supreme Court's opinion in
 
 King II
 
 was not argued in Defendant's original brief or in his petition for discretionary review, and this Court has received no direction from our Supreme Court beyond that included in its 24 September 2015 order. Defendant's sole argument on appeal was that "[t]here is nothing in
 
 Howerton [v. Arai Helmet, Ltd.,
 

 358 N.C. 440
 
 ,
 
 597 S.E.2d 674
 
 (2004) ] or [ Rule 702 ] to suggest that a witness must have personally interviewed the person(s) about whom she will testify. Indeed, this Court has approved of expert testimony from such witnesses testifying for the prosecution." Defendant's discussion of Rule 702 in his brief is limited to his argument that nothing in Rule 702 prohibited Dr. Artigues' testimony simply because she had not interviewed the children. Defendant does not argue that the trial court erred by failing to find Dr. Artigues was an expert in the relevant field. The trial court seemed to have made a determination that Dr. Artigues was, in fact, an expert. The trial court did not make
 
 *318
 
 any specific findings or conclusions related to Rule 702. We have found that the trial court relied on the State's argument that Dr. Artigues could not give expert opinion testimony because she had not personally interviewed the children. As we have held above, Dr. Artigues' testimony was not inadmissible simply because she had not interviewed the children.
 

 With these facts in mind, we attempt to determine how
 
 King II
 
 is relevant to our analysis. One of the holdings in
 
 King II
 
 "disavow[ed] the portion of the [Court of Appeals] opinion ... requir[ing] expert testimony always to accompany the testimony of a lay witness in cases involving allegedly recovered memories."
 
 King II,
 

 366 N.C. at 68-69
 
 ,
 
 733 S.E.2d at 536
 
 . Defendant did argue at trial that the State should not allow the alleged victim's testimony, which Defendant contended amounted to recovered memories, without also providing expert testimony. Defendant relied on the Court of Appeals' opinion in
 
 State v. King,
 

 214 N.C.App. 114
 
 ,
 
 713 S.E.2d 772
 
 (2011) ("
 
 King I
 
 "), as well as
 
 Barrett v. Hyldburg,
 

 127 N.C.App. 95
 
 ,
 
 487 S.E.2d 803
 
 (1997),
 
 [7]
 
 in support of this argument. However, our Supreme Court's holding in
 
 King II
 
 makes clear that expert testimony is not always required.
 
 King II,
 

 366 N.C. at 78
 
 ,
 
 733 S.E.2d at 542
 
 . Defendant is not arguing on appeal that the testimony of the children should have been excluded because there was no expert testimony presented at trial explaining repressed memory; rather, Defendant is arguing that his expert's testimony should have been allowed. We do not believe this holding in
 
 King II
 
 is relevant to the issue before us.
 

 Our Supreme Court in
 
 King II
 
 affirmed this Court's prior holding that the trial court had
 
 not
 
 abused its discretion by
 
 granting
 
 the defendant's motion to suppress "expert testimony regarding repressed memory" by the
 
 State's
 
 witness.
 
 Id.
 
 at 68,
 
 733 S.E.2d at 536
 
 . Our Supreme Court based this holding in part on its findings that
 

 the trial court first acknowledged and then followed the requirements listed in
 
 Howerton.
 
 Upon reaching the question of general acceptance of the theory of repressed memory, the trial court observed that, although vigorous and even rancorous debate was ongoing within the relevant scientific community,
 
 Howerton
 
 did not require establishing either conclusive reliability or indisputable validity. As a result, the debate
 
 *859
 
 within the scientific community did not by itself prevent admission of evidence
 
 *319
 
 regarding repressed memory. Accordingly, the trial court turned to the final prong of
 
 Howerton
 
 and determined that the testimony was relevant. However, the court went on to conclude that, even though the
 
 Howerton
 
 test had been "technically met" and the evidence was relevant, the expert testimony was inadmissible under Rule 403 because recovered memories are of "uncertain authenticity" and susceptible to alternative possible explanations. The court further found that "the prejudicial effect [of the evidence] increases tremendously because of its likely potential to confuse or mislead the jury." The trial court therefore exercised its discretion to exclude the evidence about repressed memory on the grounds that the probative value of the evidence was outweighed by its prejudicial effect.
 

 We conclude that the trial court did not abuse its discretion by granting defendant's motion to suppress after applying Rule 702,
 
 Howerton,
 
 and Rule 403. The test of relevance for expert testimony is no different from the test applied to all other evidence. Relevant evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (2011). We agree with the trial court that the expert evidence presented was relevant. Nevertheless, like all other relevant evidence, expert testimony must satisfy the requirements of Rule 403 to be admissible. Although the dissenting judge in the Court of Appeals accurately pointed out that
 
 Howerton
 
 envisions admission of expert testimony on controversial theories, he also correctly noted that "not ... all 403 safeguards are removed" when the
 
 Howerton
 
 factors apply. If all other tests are satisfied, the ultimate admissibility of expert testimony in each case will still depend upon the relative weights of the prejudicial effect and the probative value of the evidence in that case.
 

 Battles of the experts will still be possible in such cases. However, when a judge concludes that the possibility of prejudice from expert testimony has reached the point where the risk of the prejudice exceeds the probative value of the testimony, Rule 403 prevents admission of that evidence. The trial judge here assiduously sifted through expert testimony that lasted two days,
 
 *320
 
 thoughtfully applied the requirements set out in
 
 Howerton
 
 to that testimony, then applied the Rule 403 balancing test, explaining his reasoning at each step. We see no abuse of discretion and affirm the holding of the Court of Appeals that found no error in the trial court's decision to suppress expert testimony evidence of repressed memory.
 

 King II,
 

 366 N.C. at 76-77
 
 ,
 
 733 S.E.2d at 540-41
 
 . Initially, we note that in
 
 King II
 
 the trial court ruled the State's expert testimony was admissible pursuant to Rule 702, but excluded the testimony pursuant to Rule 403. The State only appealed the trial court's ruling pursuant to Rule 403, as the Rule 702 ruling was in the State's favor. Therefore, the Rule 702 analysis in
 
 King I
 
 and
 
 King II
 
 was not necessary to the outcome of either opinion.
 

 Further,
 
 King II
 
 involved application of the earlier version of Rule 702. In its Rule 702 analysis, our Supreme Court in
 
 King II
 
 was applying the factors set out in
 
 Howerton.
 

 State v. King II,
 

 366 N.C. at 75
 
 ,
 
 733 S.E.2d at 540
 
 ("The test to determine whether proposed expert testimony is admissible was set out in
 
 Howerton,
 
 in which this Court rejected the federal standard for admission of expert testimony established by the United States Supreme Court in
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 

 509 U.S. 579
 
 ,
 
 113 S.Ct. 2786
 
 ,
 
 125 L.Ed.2d 469
 
 (1993).
 
 Howerton,
 

 358 N.C. at 469
 
 ,
 
 597 S.E.2d at 693
 
 .
 
 Howerton
 
 approved the three-part test for determining admissibility of expert testimony described in
 
 State v. Goode.
 

 Id.
 
 at 458, 469,
 
 597 S.E.2d at 686
 
 , 692 (citing
 
 Goode,
 
 341 N.C. at 527-29, 461 S.E.2d at 639-41 ).").
 

 As this Court has noted:
 

 Rule 702 was amended effective 1 October 2011. See
 
 2011 N.C. Sess. Laws 283
 
 § 1.3. While our Supreme Court has not yet addressed the amendment to Rule 702, our Court of Appeals has done so and recently noted that "[o]ur Rule 702 was amended to
 
 *860
 
 mirror the Federal Rule 702, which itself ' "was amended to conform to the standard outlined in
 
 Daubert [v. Merrell Dow Pharms., Inc.,
 

 509 U.S. 579
 
 ,
 
 113 S.Ct. 2786
 
 ,
 
 125 L.Ed.2d 469
 
 (1993) ]." ' "
 
 Pope v. Bridge Broom, Inc.,
 
 --- N.C.App. ----,
 
 770 S.E.2d 702
 
 , 707 (2015) (citing
 
 State v. McGrady,
 

 232 N.C.App. 95
 
 , 97-98,
 
 753 S.E.2d 361
 
 , 365 (quoting Committee Counsel Bill Patterson, 2011-2012 General Assembly, House Bill 542: Tort Reform for Citizens and Business 2-3 n. 3 (8 June 2011)),
 
 disc. review allowed,
 

 367 N.C. 505
 
 ,
 
 758 S.E.2d 864
 
 (2014) ).
 

 *321
 

 State v. Turbyfill,
 
 --- N.C.App. ----, ----,
 
 776 S.E.2d 249
 
 , 253 (2015). Rule 702 states, in pertinent part:
 

 If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
 

 (1) The testimony is based upon sufficient facts or data.
 

 (2) The testimony is the product of reliable principles and methods.
 

 (3) The witness has applied the principles and methods reliably to the facts of the case.
 

 N.C. Gen.Stat. § 8C-1, Rule 702(a) (2013). Subsections (1)(2) and (3) were added by the 2011 amendment, effective 1 October 2011. The trial court was not considering these factors, however, as it was operating under the assumption that the prior version of Rule 702 applied. Further, there is no evidence the trial court even considered the
 
 Howerton
 
 factors, most likely because of its erroneous belief that
 
 Robertson
 
 mandated that Dr. Artigues' testimony be excluded. Regarding the current version of Rule 702, this Court has held:
 

 Consistent with the application of Federal Rule 702 in federal courts, under North Carolina's amended Rule 702, trial courts must conduct a three-part inquiry concerning the admissibility of expert testimony:
 

 Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue."
 

 Id.
 

 Third, the testimony must be reliable.
 

 Id.
 

 Turbyfill,
 
 --- N.C.App. at ----,
 
 776 S.E.2d at
 
 254 ;
 
 see also
 

 Daubert,
 

 509 U.S. at 594-95
 
 ,
 
 113 S.Ct. at 2797
 
 ,
 
 125 L.Ed.2d at 484
 
 (1993) ("The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity-and thus the evidentiary relevance and reliability-of the
 
 *322
 
 principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").
 

 We discern several parts of the analysis in
 
 King II
 
 that are potentially relevant to the issues raised at trial, even if not issues directly before us on appeal. First, because scientific understanding of any particular issue is constantly advancing and evolving, courts should evaluate the specific scientific evidence presented at trial and not rigidly adhere to prior decisions regarding similar evidence with the obvious exception of evidence-results of polygraph tests, for example-that has been specifically held inadmissible.
 
 King II,
 

 366 N.C. at 77
 
 ,
 
 733 S.E.2d at 541
 
 ("[W]e stress that we are reviewing the evidence presented and the order entered in this case only. We promulgate here no general rule regarding the admissibility or reliability of repressed memory evidence under either Rule 403 or Rule 702. As the trial judge himself noted, scientific progress is 'rapid and fluid.' "). Second, even evidence of disputed scientific validity will be admissible pursuant to Rule 702 so long as the requirements of Rule 702 are met. In
 
 King II,
 
 the trial court expressed great concern over the validity of alleged repressed and recovered memories but ruled that the proposed expert testimony regarding repressed memories satisfied the requirements of the
 
 Howerton
 
 analysis then required by Rule 702.
 
 King II,
 

 366 N.C. at 72-73
 
 ,
 
 733 S.E.2d at 538
 
 . Our Supreme Court agreed with the decision of the trial court.
 

 *861
 

 King II,
 

 366 N.C. at 76
 
 ,
 
 733 S.E.2d at 540-41
 
 . We note, however, that the trial court in
 
 King II
 
 was applying the less stringent
 
 Howerton
 
 test associated with the prior version of Rule 702. It is uncertain whether our Supreme Court would come to the same conclusion when applying the current version of Rule 702. Third, the reasoning of the trial court will be given great weight when analyzing its discretionary decision concerning the admission or exclusion of expert testimony. When it is clear that the trial court conducted a thorough review and gave thorough consideration to the facts and the law, appellate courts will be less likely to find an abuse of discretion. Concerning the trial court's ruling in
 
 King II,
 
 our Supreme Court stated:
 

 As detailed above, the trial court first acknowledged and then followed the requirements listed in
 
 Howerton.
 
 Upon reaching the question of general acceptance of the theory of repressed memory, the trial court observed that, although vigorous and even rancorous debate was ongoing within the relevant scientific community,
 
 Howerton
 
 did not require establishing either conclusive reliability or indisputable validity. As a result, the debate within the
 
 *323
 
 scientific community did not by itself prevent admission of evidence regarding repressed memory. Accordingly, the trial court turned to the final prong of
 
 Howerton
 
 and determined that the testimony was relevant. However, the court went on to conclude that, even though the
 
 Howerton
 
 test had been "technically met" and the evidence was relevant, the expert testimony was inadmissible under Rule 403 because recovered memories are of "uncertain authenticity" and susceptible to alternative possible explanations. The court further found that "the prejudicial effect [of the evidence] increases tremendously because of its likely potential to confuse or mislead the jury." The trial court therefore exercised its discretion to exclude the evidence about repressed memory on the grounds that the probative value of the evidence was outweighed by its prejudicial effect.
 

 ....
 

 The trial judge here assiduously sifted through expert testimony that lasted two days, thoughtfully applied the requirements set out in
 
 Howerton
 
 to that testimony, then applied the Rule 403 balancing test, explaining his reasoning at each step. We see no abuse of discretion and affirm the holding of the Court of Appeals that found no error in the trial court's decision to suppress expert testimony evidence of repressed memory.
 

 King II,
 

 366 N.C. at 76-77
 
 ,
 
 733 S.E.2d at
 
 540-41 ;
 
 see also
 

 id.
 
 at 71,
 
 733 S.E.2d at 538
 
 ("After hearing arguments from the State and from defendant, the trial court granted defendant's motion to suppress in an extensive oral order issued from the bench on 13 April 2010. On 23 April 2010, the trial court entered a written order making findings of fact and conclusions of law."). Finally, the trial court is granted broad discretion in deciding whether to admit expert testimony:
 

 A leading treatise on evidence in North Carolina acknowledges that "there can be expert testimony upon practically any facet of human knowledge and experience." When making preliminary determinations on the admissibility of expert testimony, "trial courts are not bound by the rules of evidence." In reviewing trial court decisions relating to the admissibility of expert testimony evidence, this Court has long applied the deferential standard of abuse of
 
 *324
 
 discretion. Trial courts enjoy "wide latitude and discretion when making a determination about the admissibility of [expert] testimony." A trial court's admission of expert testimony " 'will not be reversed on appeal unless there is no evidence to support it.' " Thus, " 'the trial court is afforded wide discretion' in determining the admissibility of expert testimony and 'will be reversed only for an abuse of that discretion.' "
 

 King II,
 

 366 N.C. at 74-75
 
 ,
 
 733 S.E.2d at 539-40
 
 (citations omitted).
 

 In the present case, the trial court ruled-based only upon the State's arguments and defense counsel's proffer of what Dr. Artigues' testimony would be-that Defendant could not call Dr. Artigues to testify. The trial court did not articulate the basis for its decision. Later, during the trial, a
 
 voir dire
 
 was conducted to preserve Dr. Artigues' excluded opinion testimony for appellate review. During this
 
 voir dire,
 
 the trial court
 
 *862
 
 cut short testimony concerning Dr. Artigues' qualifications, stating: "I'm sure she's an expert in the field she's purported to be an expert in. Let's just get to the issue at hand." Following
 
 voir dire,
 
 the trial court stated that it would not change its prior ruling excluding Dr. Artigues' testimony. The trial court did not articulate its reasoning from the bench, nor did it enter any written order in support of its ruling. Even had the trial court entered an order with findings of fact and conclusions of law in support of its ruling, the conclusions would have been based upon application of the incorrect test for admissibility.
 

 Pursuant to the current requirements of Rule 702, in order for Dr. Artigues' testimony to have been admissible, the trial court would have needed to determine, first, that she was "qualified by 'knowledge, skill, experience, training, or education.' "
 
 Turbyfill,
 
 --- N.C.App. at ----,
 
 776 S.E.2d at 254
 
 (citations omitted). As part of this determination, the trial court would have needed to conclude that Dr. Artigues' "testimony [was] based upon sufficient facts or data[, that it was] the product of reliable principles and methods[, and that Dr. Artigues had] applied the principles and methods reliably to the facts of the case." N.C. Gen.Stat. 8C-1, 702(a). Second, Dr. Artigues' testimony must have been "relevant, meaning that it '[would] assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must [have been] reliable."
 
 Turbyfill,
 
 --- N.C.App. at ----,
 
 776 S.E.2d at 254
 
 (citations omitted). The trial court acknowledged that Dr. Artigues was an expert in her field; however, there was no evidence presented concerning whether her proffered "testimony [was] based upon sufficient facts or data[, whether it was] the product of reliable principles and methods[,
 
 *325
 
 and whether Dr. Artigues had] applied the principles and methods reliably to the facts of the case." N.C. Gen.Stat. 8C-1, 702(a). There was no argument made at trial that Dr. Artigues' testimony was unreliable, and there was no indication that the trial court believed it to be so. There is no indication that the trial court considered whether the proposed testimony concerning the suggestibility of children was relevant to any issue at trial. However, we note that the threshold for the relevancy prong is permissive:
 

 " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (2003). As stated in
 
 Goode,
 
 "in judging relevancy, it should be noted that expert testimony is properly admissible when such testimony can assist the jury to draw certain inferences from facts because the expert is better qualified than the jury to draw such inferences." 341 N.C. at 529, 461 S.E.2d at 641.
 

 Howerton,
 

 358 N.C. at 462
 
 ,
 
 597 S.E.2d at 688-89
 
 .
 

 Further, the trial court did not make any findings or conclusions related to Rule 403. This was, we believe, because the trial court did not conduct any Rule 403 review. If, as seems apparent, the trial court believed Dr. Artigues' testimony was inadmissible as a matter of law, the trial court would have found Rule 403 review unnecessary.
 

 Presumably because it did not believe a full hearing on Rule 702 and Rule 403 was required, the trial court failed to conduct sufficient review of the admissibility of Dr. Artigues' proposed testimony, failed to address the requirements of Rule 702 and Rule 403, and made no findings or conclusions related to these rules. Even if the trial court excluded Dr. Artigues' testimony based upon Rule 702 or Rule 403 instead of an erroneous conclusion that
 
 Robertson
 
 prohibited her testimony, we would still reverse and remand. Based upon the record before us, we cannot make any determination concerning whether the trial court would have abused its discretion in excluding Dr. Artigues' testimony pursuant to either Rule 702 or Rule 403.
 

 NEW TRIAL.
 

 Judges STEPHENS and HUNTER, JR. concur.
 

 [1]
 

 Though E.C. and J.C. were adults at the time of the trial, because the alleged crimes and most of the relevant events occurred when E.C. and J.C. were children, and for ease of understanding, in this opinion we shall refer to them collectively as "the children" even when we are discussing events that occurred after they reached adulthood.
 

 [2]
 

 The children considered this person to be their grandmother though she was not a blood relation.
 

 [3]
 

 Though it is not clear from the record, it appears the State was referring to
 
 State v. Embler,
 

 213 N.C.App. 218
 
 ,
 
 714 S.E.2d 209
 
 (2011) (unpublished opinion).
 

 [4]
 

 The State also appears to have argued
 
 Embler,
 

 213 N.C.App. 218
 
 ,
 
 714 S.E.2d 209
 
 , in support of its position. However, we do not find the holdings in
 
 Embler
 
 relevant to the issues before us. In addition,
 
 Embler
 
 is an unpublished opinion and therefore not binding.
 

 [5]
 

 Current science seems to have shifted to a position that young children are
 
 more
 
 susceptible to adopting misleading suggestions.
 
 See, e.g.,
 
 Maggie Bruck and Stephen J. Ceci,
 
 The Suggestibility of Children's Memory,
 
 50 Ann. Rev. Psychol. 419-39 (1999);
 
 see also
 

 United States v. Rouse,
 

 100 F.3d 560
 
 , 569-71 (8th Cir.1996),
 
 reh'g en banc granted, judgment vacated,
 

 107 F.3d 557
 
 (8th Cir.1997).
 

 [6]
 

 E.C. reportedly told an investigator in 1994 that her mother and grandmother were "grilling" her and trying to get E.C. to admit that Defendant had molested her. During the 1994 investigation, E.C. denied any inappropriate contact with Defendant had ever occurred.
 

 [7]
 

 Abrogated by
 
 King II,
 

 366 N.C. at 78
 
 ,
 
 733 S.E.2d at 542
 
 .